IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| v. | ) | 2:16-cr-00139 |
| | ) | |
| MARK COLEMAN, | ) | Chief Judge Mark R. Hornak |
| | ) | |
| Defendant. | ) | |

**OPINION**

**Mark R. Hornak, Chief United States District Judge**

Defendant Mark Coleman is currently serving a ninety-two (92) month sentence for one (1) count of conspiracy to possess with intent to distribute oxycodone and oxymorphone. The in-custody sentence is to be followed by six (6) years of supervised release. Mr. Coleman currently resides at FCI Gilmer, and according to the Bureau of Prisons ("BOP") inmate locator, his scheduled release date is June 20, 2023.

In June 2020, Mr. Coleman filed an administrative request for compassionate release with the BOP based on multiple chronic medical conditions. His request was denied by the Warden of FCI Gilmer on July 13, 2020. Now, Mr. Coleman moves this Court for a Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), stating that his diabetes, obesity, and hypertension, combined with the heightened risk of contracting COVID-19 while in custody, warrant compassionate release.

While the Court concludes that Mr. Coleman's Motion is properly before it and that his medical conditions rise to an "extraordinary and compelling" level, release is not warranted on the record before the Court. The record demonstrates that Mr. Coleman has been receiving adequate medical care for his health conditions. Moreover, Mr. Coleman has more than two (2)

1

years left in his in-custody sentence, and he has a long history of criminal offenses, including multiple offenses that occurred when he was previously released on bond. Upon consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a), a reduction of Mr. Coleman's sentence is inappropriate at this time. Accordingly, the Defendant's Motion for Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) at ECF No. 869 (and amended at ECF No. 882) is DENIED without prejudice subject to its reassertion should circumstances warrant.

## I.   **BACKGROUND**

On March 21, 2018, Mr. Coleman entered a guilty plea in the above-captioned matter to one (1) count of conspiracy to possess with intent to distribute oxycodone and oxymorphone in violation of 21 U.S.C. § 846. (ECF No. 465.) On August 10, 2018, this Court imposed a ninety-two (92) month sentence of incarceration, followed by six (6) years of supervised release. (ECF No. 597.) As of the date of this opinion, Mr. Coleman has served approximately forty-six (46) months of actual incarceration.

At the time of sentencing, the Court was made aware of Mr. Coleman's various mental health conditions, including depression and schizophrenia. (ECF No. 582, at 6.) The Court was not informed of any physical health conditions, apart from back pain related to an earlier bullet wound. (*See id.*)

On June 17, 2020, Mr. Coleman submitted an administrative request for compassionate release to the Warden of FCI Gilmer. (ECF No. 882-2.) In the request, Mr. Coleman stated that he was receiving chronic-care medical treatment for diabetes, hypertension, and high cholesterol. (*Id.*) His request did not expressly mention COVID-19-related concerns. The Warden denied Mr. Coleman's request for release on July 13, 2020, and in doing so, he evidently considered Mr. Coleman's health concerns in light of COVID-19. (*See* ECF No. 897-1.) The Warden explained

that Mr. Coleman's "concern about being potentially exposed to" COVID-19 while in BOP

custody did not warrant early release. (*See id.*) The Warden also noted BOP's "extraordinary

measures to contain the spread" of COVID-19. (*Id.*)

Having exhausted his administrative remedies, on August 5, 2020, Mr. Coleman filed a

*pro se* motion for compassionate release. (ECF No. 869.) In the motion, he argued that

extraordinary and compelling reasons for release existed because he has medical conditions that

make him "at risk" of severe illness if he were to contract COVID-19. (ECF No. 869, at 3.)

Specifically, he explained that his diabetes, hypertension, and obesity make him more

susceptible to infection. (*Id.* at 3–4.) He also argued broadly that consideration of the § 3553(a)

factors warranted release. (*Id.* at 5.) Mr. Coleman attached to his motion his administrative

request for relief, three (3) pages of medical records, and four (4) pages of vocational certificates

that he received in custody. (*See* ECF Nos. 869-1, 869-2, and 869-3.) The medical records show

that he is being treated for type 2 diabetes mellitus with diabetic neuropathy, high cholesterol,

and hypertension. (ECF No. 869-1, at 1.)

On August 13, 2020, counsel was appointed to represent Mr. Coleman in this matter.

(ECF No. 872.) On September 17, 2020, Mr. Coleman's appointed counsel filed an amended

motion supporting Mr. Coleman's motion for release. (ECF No. 882.) As to "extraordinary and

compelling" reasons for a sentence reduction, the amended motion put forth largely the same

argument as did Mr. Coleman's *pro se* motion, again resting on the risks of COVID-19 and Mr.

Coleman's medical diagnoses of diabetes, hypertension, high cholesterol, and obesity. (ECF No.

882, at 5.) Where the amended motion supplements Mr. Coleman's *pro se* motion is with regards

to the § 3553(a) factors. Mr. Coleman's counsel argued primarily that a reduced sentence is

consistent with § 3553(a) factors because Mr. Coleman is a non-violent offender with a clean

prison disciplinary record and vocational job training, and his age of forty-one (41) makes him unlikely to recidivate. (ECF No. 882, at 5–8.)

Soon thereafter, Mr. Coleman filed more than 100 pages of supplemental medical records. (ECF No. 886.) In addition to again showing that Mr. Coleman is being treated for diabetes, hypertension, and high cholesterol, the records also support Mr. Coleman's statements that he is clinically obese. (*See* ECF No. 886-1, at 23, 29–30.)

In response, the Government initially argued that Mr. Coleman's motion was not properly before the Court because of a purported lack of evidence that Mr. Coleman had submitted to the Warden his request for relief or that the Warden had received the request. (ECF No. 893, at 2.) Mr. Coleman then submitted to the Court a copy of the Warden's actual denial of his request, dated July 13, 2020. (ECF No. 897-1.) Accordingly, counsel for the Government advised the Court that it no longer contested administrative exhaustion. (ECF No. 899.)

On the merits, the Government contested that compassionate release is warranted based on the record before the Court. Though the Government acknowledged that Mr. Coleman's health puts him at risk of illness in light of COVID-19, counsel for the United States argued that "extraordinary and compelling" circumstances do not exist here without any additional evidence regarding the specificity or severity of Mr. Coleman's conditions. (ECF No. 893, at 4–5.) The Government further argued that the § 3553(a) factors do not favor Mr. Coleman because he remains a danger to the community and, given his criminal history, incarceration is necessary to deter him from committing further offenses. (*Id.* at 9–11.) Mr. Coleman filed a reply to the Government's response on October 8, 2020. (ECF No. 894.) The matter is now ripe for disposition.

## II.   <u>LEGAL STANDARD</u>

"[A]s a general matter, a court cannot modify a term of imprisonment after it has been imposed without specific authorization." *McMillan v. United States*, 257 F. App'x 477, 479 (3d Cir. 2007); *see also Dillon v. United States*, 560 U.S. 817, 819 (2010) ("A federal court generally may not modify a term of imprisonment once it has been imposed."). One such specific authorization is the First Step Act's amendment of 18 U.S.C. § 3582. As amended, that provision allows a court to modify a defendant's term of imprisonment if "extraordinary and compelling reasons warrant such a reduction." § 3582(c)(1)(A)(i). In addition, the court must consider: (1) whether the defendant has exhausted the appropriate administrative remedies; (2) the factors set forth in 18 U.S.C. § 3553(a) to the extent that they are applicable; and (3) whether such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. § 3582(c)(1)(A).

## III.   <u>DISCUSSION</u>

After considering the relevant factors, the Court finds that Mr. Coleman's Motion is properly before it, including his COVID-19-related concerns. Additionally, the Court finds that Mr. Colemans's medical conditions, as exacerbated by his particularized risk for severe illness should he contract the COVID-19 virus, rise to an "extraordinary and compelling" level. However, in considering the § 3553(a) factors as the Court is obligated to do, the Court concludes that Mr. Coleman's sentence remains necessary to deter him from committing further offenses, and as such, compassionate release is inappropriate at this time.

### A.  <u>Administrative Exhaustion</u>

In order to consider the merits of the Defendant's Motion, the Court must first determine whether Mr. Coleman has complied with 18 U.S.C. § 3582(c)(1)(A)'s exhaustion requirement.

Prior to petitioning a court for relief under § 3582(c), a defendant must first file an administrative request for compassionate release with the warden of their facility and then either: (1) fully exhaust the BOP's administrative remedies; or (2) wait thirty (30) days from the date their administrative request was filed with the warden. § 3582(c)(1)(A). And the Third Circuit confirmed that either of § 3582(c)(1)(A)'s options (acting independently) are sufficient to satisfy the exhaustion requirement. *See United States v. Harris*, 973 F.3d 170, 171 (3d Cir. 2020) (rejecting the argument that a defendant is required to completely exhaust the administrative remedy process if the warden denies a defendant's request within thirty (30) days of receiving it, primarily because "the statute states that the defendant may file the motion [before a district court] thirty days after the warden receives his request").

Here, though the Government initially challenged Mr. Coleman's Motion based on lack of exhaustion, *see* ECF No. 893, at 2–3,[1] the Government no longer contests the Court's authority to adjudicate the Defendant's Motion on that basis. (*See* ECF No. 899.) While the Court does not dispute that assertion and accepts the Government's position that Mr. Coleman's Motion is ripe for disposition, the Court must nonetheless determine whether exhaustion is satisfied because our Circuit has held that § 3582(c)(1)(A)'s exhaustion requirement is mandatory. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) (mandating "strict compliance" with § 3582(c)(1)(A)'s exhaustion requirement); *see also United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) ("Even though [§ 3582(c)(1)(A)'s] exhaustion requirement does not implicate our subject-matter jurisdiction, it remains a mandatory condition.").

---

[1] The Government initially argued that Mr. Coleman did not demonstrate exhaustion because Mr. Coleman did not prove that he submitted his request or that the Warden received it. (ECF No. 893, at 2–3.) In reply, Mr. Coleman filed the Warden's actual denial of his administrative request, demonstrating both that Mr. Coleman did submit his request and that the Warden received it. (ECF No. 897-1). The Government then conceded that Mr. Coleman met the administrative exhaustion requirement. (ECF No. 899.)

In any event, the Court concludes that Mr. Coleman has satisfied § 3582(c)(1)(A)'s exhaustion requirement based on the "thirty-day option" because the BOP has had more than thirty (30) days to consider all of the claims he is now attempting to bring before this Court. On June 17, 2020, Mr. Coleman submitted an administrative request for compassionate release to the Warden of FCI Gilmer. (ECF No. 882-2.) Mr. Coleman sought release based on the chronic-care medical treatment he receives for his diabetes, hypertension, and high cholesterol. (*Id.*) The Warden denied Mr. Coleman's request for release on July 13, 2020. (ECF No. 897-1.) Though Mr. Coleman did not explicitly mention the COVID-19 pandemic in his request for release, there is no doubt that the Warden considered COVID-19 in reaching a decision on the request. In the denial, the Warden stated that the BOP was "taking extraordinary measures to contain the spread of COVID-19 and treat any affected inmates." (*Id.*) And the Warden specifically recognized Mr. Coleman's "concern about being potentially exposed to, or possibly contracting," COVID-19. (*Id.*) The Warden concluded that Mr. Coleman's COVID-19-related concerns did not warrant an early release from his sentence. (*Id.*) It is therefore evident to the Court that the Warden viewed Mr. Coleman's request for release as at least in part based on Mr. Coleman's medical conditions and his related concerns about the risk of contracting COVID-19 in prison.

In sum, the record in Mr. Coleman's case demonstrates that the exhaustion requirement has been met. The Court finds that the BOP had more than thirty (30) days to consider Mr. Coleman's overall medical condition, including consideration of those concerns in the context of the COVID-19 pandemic. Mr. Coleman has exhausted his BOP administrative obligations, both as to his medical conditions generally and as to his particularized COVID-19-related concerns, which the United States has also acknowledged. The Court will proceed accordingly.

### B. **"Extraordinary and Compelling" Reasons**

Next, the Court must determine whether Mr. Coleman's several medical conditions, as exacerbated by the ongoing COVID-19 pandemic, rise to an "extraordinary and compelling" level, such that release could be warranted under § 3582(c)(1)(A)(i).

Section 3582 does not define the phrase "extraordinary and compelling reasons." Instead, Congress delegated that task to the Sentencing Commission. *See* 28 U.S.C. § 994(t) (stating that the Sentencing Commission "shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"). The Sentencing Commission defined "extraordinary and compelling" as it related to the BOP's discretion under the pre-First Step Act version of § 3582(c)(1)(A)(i), but has not updated the applicable Policy Statement, found in the U.S. Sentencing Guidelines Manual ("the Guidelines") § 1B1.13, since the First Step Act became law. *See United States v. Rodriguez*, 451 F. Supp. 3d 392, 396, 2020 WL 1627331, at *3 (E.D. Pa. Apr. 1, 2020). Despite that the relevant portions of the Guidelines predate the passage of the applicable provisions of the First Step Act, and would be advisory in any event, they do provide some initial benchmarks for the Court's consideration. *See id.* at *4397 ("[A] majority of district courts have concluded that the 'old policy statement provides helpful guidance, [but] . . . does not constrain [a court's] independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3852(c)(1)(A).'") (quoting *Beck*, 425 F. Supp. 3d at 582). For example, the Policy Statement provides that a defendant may show "extraordinary and compelling" reasons for compassionate release based on the defendant's medical condition, age, family circumstances, or "other reasons." § 1B1.13, cmt. n.(1).

Particular to Mr. Colemans's situation, the Application Notes to § 1B1.13 of the Guidelines speak to conditions which would support compassionate release in the form of two (2) different medical conditions that can rise to an "extraordinary and compelling" level: (1) terminal illnesses; and (2) non-terminal conditions that substantially diminish the ability of the defendant to provide self-care within the correctional environment. Here, the Court finds that the combination of Mr. Coleman's several conditions, paired with the additional risks that he faces due to the COVID-19 pandemic, rise to an "extraordinary and compelling" level pursuant to the "non-terminal" option.

### 1. The Terminal Illness Option

First, the Court finds that Mr. Coleman does not qualify for relief under the "terminal illness" option, because he is not afflicted with a "terminal" condition.

The relevant Application Note suggests that a defendant suffers from a "terminal illness" if they are afflicted with "a serious and advanced illness with an end of life trajectory." § 1B1.13, cmt. n.(1)(A)(i). A "specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required" to prove that an illness is "terminal." *Id.* Examples of terminal illnesses provided by the Guidelines include "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." *Id.*

Here, nothing currently before the Court suggests that Mr. Coleman's current conditions are so serious or advanced in nature that they are marked by an "end of life trajectory." As such, the Court concludes that Mr. Coleman does not qualify for compassionate release based upon his affliction with a "terminal illness."

## 2. __The Non-Terminal Illness Option__

The Court, however, does conclude that Mr. Coleman could qualify for relief under the "non-terminal" illness option, especially in the context of the COVID-19 pandemic. The Sentencing Commission's Policy Statement suggests that non-terminal medical conditions may constitute extraordinary and compelling reasons if "a defendant is suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." § 1B1.13, cmt. n.(1)(A)(ii).

Here, Mr. Coleman moves for release based on four (4) medical conditions, some of which put him at risk of contracting severe illness from the coronavirus: (1) type 2 diabetes mellitus with diabetic neuropathy, (2) chronic hypertension, (3) high cholesterol, and (4) clinical obesity. (ECF No. 882, at 5.) Mr. Coleman submitted to the Court more than 100 pages of medical records that sufficiently demonstrate that he suffers from these medical conditions. (*See* ECF No. 886-1.) The records indicate that he takes daily medications to treat his diabetes, hypertension, and high cholesterol. (ECF No. 886-1, at 9–13.) Diabetic neuropathy is a type of nerve damage that is a complication of diabetes and can cause a range of symptoms. It is unclear from the record how diabetic neuropathy affects Mr. Coleman. As for his obesity, Mr. Coleman argues that his body mass index (BMI) is greater than forty (40). (ECF No. 882, at 5.) But according to the weight and height listed in his medical records, his BMI is slightly above thirty-four (34). (*See* ECF No. 886-1, at 29–30.) In any event, a BMI above thirty (30) is still considered obese. *See About Adult BMI*, Ctrs. for Disease Control & Prevention (last updated Sept. 17, 2020), https://bit.ly/2HuhvIL. The Court notes, however, that this difference in BMI is not negligible, as the CDC considers a BMI greater than forty (40) to be "severe obesity." *See*

*Defining Adult Overweight and Obesity*, Ctrs. for Disease Control & Prevention (last updated Sept. 17, 2020), https://bit.ly/2TyHelo. And "[a]s BMI increases, the risk of death from COVID-19 increases." *Obesity, Race/Ethnicity, and Covid-19*, Ctrs. for Disease Control & Prevention (last updated Oct. 12, 2020), https://bit.ly/31Rejxu.

As the Government notes, the medical records indicate that Mr. Coleman is receiving adequate medical attention as to both his physical and mental health, including, as mentioned above, daily medications for his relevant medical conditions. (*See* ECF No. 893, at 5; *see also* ECF No. 866.) Mr. Coleman does not point to anything in the record to illustrate that his conditions have worsened or been exacerbated while in prison.

But even still, it appears to the Court that the COVID-19 pandemic has to a degree diminished Mr. Coleman's ability to care for himself while in custody. In *United States v. Raia*, the Third Circuit held that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's . . . extensive and professional efforts to curtail the virus's spread." 954 F.3d at 597. In other words, a defendant's motion for compassionate release based in part on COVID-19-related concerns must move beyond "citing to nationwide COVID-19 statistics, asserting generalized statements on conditions of confinement within the BOP, or making sweeping allegations about a prison's ability or lack thereof to contain an outbreak." *United States v. Graham*, No. 12-cr-184, 2020 WL 3053106, at *4 (W.D. La. June 8, 2020) (citing *Raia*).

Here, Mr. Coleman has done just that. Mr. Coleman is afflicted with multiple medical conditions that place him at a higher risk of severe illness if he were to contract COVID-19. In doing so, he differentiates his COVID-19-related concerns from that of other inmates. As

discussed, Mr. Coleman has been diagnosed with type 2 diabetes mellitus with diabetic neuropathy, obesity, and hypertension. According to the CDC, both type 2 diabetes and obesity are higher risk conditions that increase a person's risk of severe illness from COVID-19. *See People with Certain Medical Conditions*, Ctrs. for Disease Control & Prevention (last updated Oct. 16, 2020), https://bit.ly/3iZBI5M. And that is not all. In addition to the conditions that do heighten Mr. Coleman's susceptibility, his hypertension might also increase his risk of severe illness from the coronavirus. *See id.* And significantly, "[t]he more underlying medical conditions someone has, the greater their risk is for severe illness from COVID-19." *See id.* Though Mr. Coleman appears to be receiving adequate medical care, there is no dispute that Mr. Coleman has multiple medical conditions that place him at a higher risk of severe illness. The Government concedes as much, acknowledging that Mr. Coleman "has set forth sufficient evidence of health conditions that make him vulnerable to contracting COVID-19 and suffering from serious consequences should he contract the virus." (ECF No. 893, at 3.)

Despite this, the Government argues that extraordinary and compelling reasons do not exist here because Mr. Coleman did not establish the severity of his medical conditions nor show how COVID-19 would impact those conditions. (*Id.* at 4.) In doing so, the Government seems to take a stance that for a defendant to meet his burden on this issue, the defendant must file an expert report or an independent examination of BOP's efforts, or introduce testimony. (*Id.* at 5.) Such a perspective would render meaningless other types of evidence, including, as relevant to this case, 101 pages of BOP Health Services medical records and additional medical information from reputable health sources such as the CDC. The Court will not adopt that mode of analysis. Indeed, the Government's position is contrary to decisions from this Court in which the Court found extraordinary and compelling reasons for release based on the relevant motions and

medical records alone. *See, e.g.*, *United States v. Davidson*, No. 2:16-CR-00139-2, 2020 WL 4877255 (W.D. Pa. Aug. 20, 2020); *United States v. Iezzi*, No. 2:17-cr-00157, 2020 WL 4726582 (W.D. Pa. Aug. 14, 2020). Mr. Coleman's motions and supplemental medical records are sufficient for the Court to determine whether the record establishes extraordinary and compelling reasons for release.

The Government also argues that extraordinary and compelling reasons for release do not exist because the BOP's efforts to contain the virus at FCI Gilmer have been effective thus far. (ECF No. 893, at 5–6.) As of October 28, 2020, there have been twenty (22) total COVID-19 cases in FCI Gilmer, with only three (3) active inmate cases. These statistics indicate that the BOP's efforts to control the spread of the virus in that facility have been working. But they also show that the facility, like most everywhere else in the country, is not immune to the virus. In fact, since the Government last checked the number of COVID-19 cases at FCI Gilmer about three (3) weeks ago, the number of total cases has increased by four (4).

Mr. Coleman's combined chronic medical conditions, two of which do put him at increased risk of severe illness and one of which might put him at increased risk of illness, make this Court inclined to conclude that there are extraordinary and compelling reasons for release. This Court has found extraordinary and compelling reasons for release in other cases where the defendant had similar medical conditions to Mr. Coleman. *See, e.g.*, *United States v. Rose*, No. 2:07-cr-278 (W.D. Pa. Oct. 6, 2020) (obesity); *United States v. Brooks*, No. 2:08-cr-167 (W.D. Pa. Sept. 30, 2020) (type 2 diabetes and hypertension); *United States v. Joseph Ollie*, No. 12-cr-09 (W.D. Pa. June 24, 2020) (type 2 diabetes, obesity, hypertension). In those cases, as here, the defendants' health concerns were not merely theoretical. In light of the ongoing and burgeoning pandemic, Mr. Coleman's multiple medical ailments make him a "higher risk" individual. As

13

such, there is no dispute that Mr. Coleman would be at a higher risk of serious illness if he contracts the virus. Mr. Coleman sufficiently differentiates his situation from others so as to rise to the level of extraordinary and compelling.

Ultimately, however, whether there are extraordinary and compelling circumstances for relief or not does not resolve Mr. Coleman's case, because, by law, that is not the end of the Court's analysis.

### C. **The 3553(a) Factors**

Even though the Court finds that an "extraordinary and compelling" reason could warrant Mr. Coleman's release, it must also consider whether release is appropriate in light of the factors set forth in § 3553(a). Specifically, "in considering the section 3553(a) factors, [the Court] should assess whether those factors outweigh the 'extraordinary and compelling reasons' warranting compassionate release, particularly whether compassionate release would undermine the goals of the original sentence." *United States v. Bess*, 455 F. Supp. 3d 53, 6610 (W.D.N.Y. Apr. 22, 2020).

In addition, the Third Circuit recently affirmed that the determination of "whether to reduce an eligible defendant's term of incarceration for compassionate release after considering the § 3553(a) factors is committed to the discretion of the [district court]." *United States v. Jones*, No. 12-cr-38, 2020 WL 3871084, at *4 (W.D. Pa. July 8, 2020) (citing *United States v. Pawlowski*, 967 F.3d 327 (3d Cir. June 26, 2020)). That discretion includes the district court's ability to consider the length of the defendant's original custodial sentence, including the portions served and remaining, when weighing the § 3553(a) factors. *Pawlowski*, 967 F.3d at 330–31.

Here, the Court concludes that any reduction of Mr. Coleman's sentence would be inappropriate at this time because the § 3553(a) factors continue to support the sentence that this

Court originally imposed. In particular, the Court finds that at least two (2) of the § 3553(a) factors weigh against Mr. Coleman's release: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; and (2) the need for the sentence imposed to reflect the seriousness of the offense, to deter criminal conduct, and to protect the public from further crimes of the defendant.

To begin, Mr. Coleman's criminal history is riddled with convictions for various significant offenses. (*See* ECF No. 893, at 6–8; ECF No. 582.) Though Mr. Coleman argues that further incarceration is unnecessary because he is a non-violent offender (*see* ECF No. 882, at 7), Mr. Coleman has repeatedly engaged in drug trafficking, the very type of offense of which Mr. Coleman was convicted in the present case. (*See* ECF No. 893, at 6–8; ECF No. 582.) He has also committed criminal offenses while out on bond. (*Id.*) It is significant to the Court that Mr. Coleman's criminal record demonstrates that his criminal behavior has persisted, despite periods of incarceration and court supervision. There is nothing before the Court that makes this period of incarceration appear to be any different than the previous ones. To be sure, the Court notes that Mr. Coleman has earned multiple vocational certificates while in custody, seemingly to prepare himself for lawful employment upon release. (*See* ECF No. 869-3.) While laudable, these recent rehabilitative efforts simply do not erase his history of criminal convictions. The record also demonstrates that a number of these convictions related to conduct committed while Mr. Coleman was on some form of supervision. (*See* ECF No. 893, at 7; ECF No. 547, at 16–17.)

More notable to the Court is that Mr. Coleman's expected release date is not until June 20, 2023, which is more than two-and-a-half years from now and constitutes a significant amount of Mr. Coleman's sentence. Taken together, considering his sentence completion and criminal

background, the Court concludes that the remainder of the ninety-two (92) month sentence is necessary to deter Mr. Coleman from committing further criminal offenses and to protect the public from any further crimes.[2]

Based on the record before it, the Court concludes that release of Mr. Coleman at this time would materially undermine the original purposes of sentencing. After all, Mr. Coleman has multiple years left of his in-custody sentence, and his criminal history indicates that past periods of incarceration have not deterred him from further engaging in criminal activity. The current record before this Court shows that Mr. Coleman is receiving adequate medical care, including daily medications for his various medical diagnoses that make him susceptible to illness from COVID-19. As a result, the Court finds that the "extraordinary and compelling" nature of Mr. Coleman's medical conditions does not outweigh the above application of the § 3553(a) factors.

## IV.   CONCLUSION

The Court has considered the relevant factors set forth in § 3582(c), as well as the applicable policy statements issued by the Sentencing Commission and the factors set forth in § 3553(a). The Court finds that Mr. Coleman's Motion is properly before it and that his medical conditions rise to an "extraordinary and compelling" level in light of the COVID-19 pandemic. However, the record before the Court indicates that sentence reduction in the form of compassionate release is inappropriate at this time because the remainder of Mr. Coleman's

---

[2] The Court notes that one of the Government's arguments that release should not be granted was that the original sentence of ninety-two (92) months, which was below the advisory guideline range of 151-188 months, already caused an unwarranted sentencing disparity. (ECF No. 893, at 11.) The Court, however, places no stock in this argument as it is not relevant to the Court that the initial sentence was below the advisory guidelines. The sentence as imposed in the Court's judgment was the sentence "sufficient but not greater than necessary" to meet the statutory purposes of sentencing, and the question now is whether considering the record before the Court, a consideration of those sentencing factors in the context of a compassionate release petition counsels a reduction in the sentence. For the reasons noted, considered as a whole, the Court concludes that at the moment, such release is not appropriate. But in making its compassionate-release determination, the Court has considered the § 3553(a) factors only with regard to the original ninety-two (92) month sentence.

incarceration (approximately thirty-two (32) months) remains necessary to fulfill the purposes of

his sentence. Accordingly, the Defendant's Motion to Reduce Sentence Pursuant to 18 U.S.C.

§ 3582(c)(1)(A)(i) at ECF No. 869 (and amended at ECF No. 882) is hereby DENIED without

prejudice subject to its reassertion should circumstances warrant.

An appropriate Order will issue.


s/ Mark R. Hornak
Mark R. Hornak
Chief United States District Judge


Dated:   October 29, 2020

cc:      All counsel of record